# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : **TO BE FILED UNDER SEAL** |
| v. | : Hon. James B. Clark III |
| IGOR FLEYSHMAKHER | : Mag. No. 19-3199 |
| | : **CRIMINAL COMPLAINT** |

I, Leonard Hatton III, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the Internal Revenue Service, Criminal Investigation Division, and that this Complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Leonard Hatton III, Special Agent
Internal Revenue Service
Criminal Investigation Division

Sworn to before me, and
subscribed in my presence

May 2, 2019 at
Newark, New Jersey

HONORABLE JAMES B. CLARK III          _____
UNITED STATES MAGISTRATE JUDGE        Signature of Judicial Officer

## ATTACHMENT A

## COUNT ONE
### (Tax Evasion – Calendar Years 2012, 2013, 2014)

From in or around 2012 through on or about January 2, 2018, in the District of New Jersey and elsewhere, defendant

## IGOR FLEYSHMAKHER

did knowingly and willfully attempt to evade and defeat a substantial part of the income tax due and owing to the United States for the calendar years 2012, 2013, and 2014, by preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the Internal Revenue Service, false and fraudulent federal personal income tax returns, for calendar years 2012, 2013, and 2014 knowing them to be false and fraudulent as to material matters.

In violation of Title 26, United States Code, Section 7201.

## ATTACHMENT B

I, Leonard Hatton III, a Special Agent with the Internal Revenue Service, Criminal Investigation Division ("IRS-CI"), having conducted an investigation and having discussed this matter with other law enforcement officers who have participated in this investigation, have knowledge of the following facts. Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

### Background

1. At all times relevant to this Criminal Complaint:

    a. Defendant IGOR FLEYSHMAKHER ("FLEYSHMAKHER") resided in Holmdel, New Jersey and was an owner and 50% equity shareholder of Prime Aid Pharmacy, located in Union City, New Jersey ("Prime Aid").

    b. Sam Khaimov ("Khaimov"), a resident of New York, was the other 50% equity shareholder in Prime Aid.[1]

    c. Prime Aid was a specialty pharmacy and health care supplier, which, among other things, prepared and supplied medications that were prescribed to treat a variety of conditions, including Hepatitis C, Crohn's disease, and rheumatoid arthritis. Prime Aid earned revenue primarily by billing and collecting receipts from insurance carriers for these prescriptions.

    d. Prime Aid operated as an "S Corporation." Under the Internal Revenue Code, the profits of an S Corporation are divided among its shareholders and reported to the IRS on the Form 1120-S. All S Corporation shareholders must separately report their respective shares of corporate income on their individual income tax returns.

2. In 2012, "Tax-Preparer-1," located in Brooklyn, New York, prepared Prime Aid's 2012 Form 1120-S.

3. In 2013 and 2014, "Tax Preparer-2," located in New York, New York, prepared Prime Aid's Forms 1120-S (together with Tax Preparer-1, the "Tax Preparers").

---

[1] On or about January 24, 2019, Khaimov was charged by separate criminal complaint for, among other things, conspiracy to pay illegal kickbacks in exchange for prescription referrals to Prime Aid. See Mag. No. 19-3049 (JBC).

2

## FLEYSHMAKHER Diverted Funds from Prime Aid to Himself and Evaded Paying Taxes on Such Income

4.  Between in or around 2012 through in or around 2014, Prime Aid maintained one operating bank account (the "Operating Account"), into which Prime Aid deposited receipts, including checks from insurance carriers. FLEYSHMAKHER and Khaimov were the only two signatories on the Operating Account.

5.  FLEYSHMAKHER, Khaimov, and a third individual employed by Prime Aid provided information from the Operating Account regarding Prime Aid's gross receipts to the Tax Preparers in order for the Tax Preparers to prepare the Forms 1120-S on behalf of Prime Aid. The Tax Preparers analyzed the deposits of the receipts in the Operating Account to determine Prime Aid's revenue. Based on the revenue figures provided by the Tax Preparers, FLEYSHMAKHER then filed his own personal tax returns on which he reported his purported personal income from Prime Aid.

6.  FLEYSHMAKHER filed his 2012 return on or about October 14, 2013, his 2013 return on or about September 26, 2014, and an amended 2014 return on or about January 2, 2018.

7.  Unbeknownst to the Tax Preparers, however, FLEYSHMAKHER did not provide the Tax Preparers with accurate information about Prime Aid's gross receipts, and, in turn, his own personal income from Prime Aid. Indeed, from in or around 2012 through in or around 2014, FLEYSHMAKHER diverted gross business income from Prime Aid, totaling approximately $33,904,310.00, into a separate undisclosed bank account ("Account-2"), which he controlled. FLEYSHMAKHER concealed that income from the Tax Preparers and failed to report his personal share of it on his personal tax returns for those years. During the same time period, FLEYSHMAKHER further concealed this diverted income by transferring it from Account-2 into a network of other bank accounts that were also controlled by him and others known to him.

8.  For example, on or about December 17, 2012, FLEYSHMAKHER deposited 10 checks into Account-2 totaling approximately $153,050.62. These checks were from insurance carriers and had been mailed to Prime Aid in connection with Prime Aid's pharmacy business. However, FLEYSHMAKHER never permitted these checks to be deposited into the Operating Account, but rather diverted the funds to himself into Account-2. Approximately 10 days later, on or about December 27, 2012, FLEYSHMAKHER withdrew approximately $329,000.00 from Account-2, which he converted into a check made payable to DYA Construction, Inc., another company that FLEYSHMAKHER owned. Because the funds never entered the Operating Account, the income was never provided to the Tax Preparers, and

3

FLEYSHMAKHER never reported his personal share of that income on his personal tax returns for 2012.

9. Similarly, on or about June 4, 2013, FLEYSHMAKHER deposited approximately four checks into Account-2 totaling approximately $143,393.02. These checks were from insurance carriers and had been mailed to Prime Aid in connection with Prime Aid's pharmacy business. However, FLEYSHMAKHER never permitted these checks to be deposited into the Operating Account, but rather diverted the funds to himself into Account-2. On the same day, FLEYSHMAKHER withdrew approximately $1,000,000.00 from Account-2, which he again converted to a check payable to his company DYA Construction, Inc. Because the funds never entered the Operating Account, the income was never provided to the Tax Preparers, and FLEYSHMAKHER never reported his personal share of that income on his personal tax returns for 2013.

10. Likewise, in or around June 2014, FLEYSHMAKHER deposited approximately 35 checks into Account-2 totaling approximately $4,680,681.75. These checks were also from insurance carriers and had been mailed to Prime Aid in connection with Prime Aid's pharmacy business. FLEYSHMAKHER never permitted these checks to be deposited into the Operating Account, but rather diverted the funds to himself into Account-2. One month later, on or about July 31, 2014, FLEYSHMAKHER withdrew approximately $5,500,000.00 from Account-2, which he converted to a check payable to DYA Construction, Inc. As in prior cases, FLEYSHMAKHER concealed this gross income from the Tax Preparers, and he did not report his share of the income on his personal tax returns for 2014.

11. For the calendar years 2012, 2013, and 2014, in the manner described above, FLEYSHMAKHER evaded paying taxes on his share of approximately $33,904,310. The annual breakdown of the approximately $33,904,310.00 in gross business income that FLEYSHMAKHER concealed from the Tax Preparers is as follows:

| Calendar Year | Approximate Number of Diverted Prime Aid Checks | Approximate Value of the Diverted Prime Aid Checks |
|---|---|---|
| 2012 | 119 | $1,916,347 |
| 2013 | 59 | $1,126,967 |
| 2014 | 255 | $30,860,996 |

12. Based on this unreported business income, of which FLEYSHMAKHER was entitled to a 50% share, his total approximate personal income tax due and owing for 2012 through 2014 is as follows:

| Calendar Year | Approximate Tax Due and Owing |
|---|---|
| 2012 | $210,256.00 |
| 2013 | $242,958.00 |
| 2014 | $5,366,023.00 |