2020R00138/JLH

RECEIVED
FEB 25 2020
AT 8:30_____M
WILLIAM T. WALSH
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Michael A. Shipp |
| v. | : | Crim. No. 20-*193* |
| IGOR FLEYSHMAKHER | : | 18 U.S.C. § 371 |
| | : | 26 U.S.C. § 7201 |

# INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

### COUNT 1
### (Conspiracy to Defraud the United States and to Pay Health Care Kickbacks)

### Relevant Entities and Individuals

1. Unless otherwise indicated, at various times relevant to this Information:

    a. The "Prime Aid Pharmacies" were specialty pharmacies located in Union City, New Jersey ("Prime Aid Union City") and Bronx, New York ("Prime Aid Bronx"), which prepared and supplied, among other things, expensive specialty medications, which were prescribed to treat a variety of conditions, including Hepatitis C, Crohn's disease, and rheumatoid arthritis.

    b. Defendant IGOR FLEYSHMAKHER ("IGOR FLEYSHMAKHER") resided in Holmdel, New Jersey. He was an owner and 50% equity shareholder of Prime Aid Union City and had an ownership interest in Prime Aid Bronx.

    c. Alex Fleyshmakher ("Alex Fleyshmakher"), a conspirator not

named as a defendant in this Information, was a Prime Aid Union City employee and had an ownership interest in Prime Aid Bronx. He resided in Morganville, New Jersey.

  d. Samuel "Sam" Khaimov ("Khaimov"), a conspirator not named as a defendant in this Information, was a licensed pharmacist and co-owner of Prime Aid Union City. Khaimov was the lead pharmacist of Prime Aid Bronx.

  e. Ruben Sevumyants ("Sevumyants"), a conspirator not named as a defendant in this Information, was the operations manager of Prime Aid Union City. Sevumyants resided in Marlboro, New Jersey.

  f. Eduard Shtindler ("Shtindler"), a conspirator not named as a defendant in this Information, was a former employee of Prime Aid Union City.

  g. Joel Grimshaw ("Grimshaw"), a conspirator not named as a defendant in this Information, was a former sales representative of Prime Aid Union City.

  h. "Doctor-1," a conspirator not named as a defendant in this Information, was a doctor with an office in Hudson County, New Jersey.

  i. "Individual-1," a conspirator not named as a defendant in this Information, was an employee in a doctor's office in Jersey City, New Jersey.

  j. Medicare and Medicaid were "health care benefit programs," as defined by 18 U.S.C. § 24(b) that affected commerce. Medicare and

Medicaid were also "Federal health care programs," as defined by 42 U.S.C. § 1320a-7b(f).

## The Kickback Conspiracy

2. From in or about 2010 through in or about August 2017, in the District of New Jersey and elsewhere, defendant

## IGOR FLEYSHMAKHER

did knowingly and intentionally conspire and agree with Khaimov, Shtindler, Alex Fleyshmaker, Sevumyants, Grimshaw, Doctor-1, Individual-1, and others to commit certain offenses against the United States, that is, to knowingly and willfully offer and pay remuneration, directly and indirectly, overtly and covertly, in cash and in kind, that is, kickbacks and bribes, in exchange for the furnishing and arranging for the furnishing of items and services, namely, the referral of prescriptions for patients to the Prime Aid Pharmacies, located in Union City, New Jersey and Bronx, New York, for which payment was made in whole or in part under a Federal health care program, namely Medicare and Medicaid, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

## Object of the Conspiracy

3. The object of the conspiracy was for IGOR FLEYSHMAKHER, Khaimov, Shtindler, Alex Fleyshmaker, Sevumyants, Grimshaw, and others to fraudulently obtain revenue for the Prime Aid Pharmacies by paying kickbacks and bribes to one or more doctors, members of doctors' offices, and others,

including Doctor-1 and Individual-1, in exchange for sending or referring prescriptions for patients to the Prime Aid Pharmacies.

## Manner and Means of the Conspiracy

4. To carry out the conspiracy and to effect its unlawful object, IGOR FLEYSHMAKHER, Khaimov, Shtindler, Alex Fleyshmaker, Sevumyants, Grimshaw, Doctor-1, Individual-1, and others engaged in a variety of means and methods including, among others, those described below.

    a. Khaimov directed employees of the Prime Aid Pharmacies, including Grimshaw, to make payments to doctors, including cash payments, to induce the doctors to send prescriptions to the Prime Aid Pharmacies.

    b. In agreement with Khaimov and others, IGOR FLEYSHMAKHER and Eduard Shtindler made payments to Doctor-1, including cash payments, to induce Doctor-1 to send prescriptions to Prime Aid Union City.

    c. In agreement with IGOR FLEYSHMAKHER, Khaimov, and others, Alex Fleyshmakher repeatedly provided items of value, including cash payments and payments by check and wire, to Indvidual-1 to induce Individual-1 to steer prescriptions from the doctor's office where Individual-1 worked to Prime Aid Union City.

    d. Sevumyants repeatedly provided items of value, including expensive meals and a designer bag, to Individual-1 to induce Individual-1 to

steer perceptions from the doctor's office where Individual-1 worked to Prime Aid Union City.

  e. The prescriptions generated through this scheme were paid in whole or in part by Medicare or Medicaid.

## Overt Acts

  5. In furtherance of the conspiracy, and to effect its object, IGOR FLEYSHMAKHER, Khaimov, Shtindler, Alex Fleyshmaker, Sevumyants, Grimshaw, Doctor-1, Individual-1, and others committed, and caused to be committed, the following acts in the District of New Jersey and elsewhere:

  a. In or about 2010, in agreement with Khaimov and IGOR FLEYSHMAKHER, Shtindler paid a cash bribe to Doctor-1 in Hudson County, New Jersey.

  b. In or about 2011, in agreement with Khaimov, Grimshaw paid a cash bribe to a New Jersey oncologist in North Bergen, New Jersey.

  c. In or about 2011, in agreement with Khaimov, Grimshaw delivered a cash bribe to the home of a gastroenterologist in Franklin Lakes, New Jersey.

  d. In or about 2012, at Khaimov and Grimshaw's direction, a Prime Aid employee delivered a cash bribe to the same gastroenterologist who resided in Franklin Lakes, New Jersey.

  e. In or about 2014, Khaimov directed an employee to deliver a bribe payment to a doctor whose office was in Queens, New York.

      f. On or about May 12, 2015, Sevumyants paid approximately $350 for a meal for Individual-1 and her family, which payment was a kickback and bribe to Individual-1.

      g. On or about August 3, 2017, Alex Fleyshmakher wired approximately $3,000 to Individual-1's bank account, which wire payment was a kickback and bribe to Individual-1.

In violation of Title 18, United States Code, Section § 371.

## COUNT 2
### (Tax Evasion)

6. The allegations contained in paragraphs 1(a) and 1(b) of this Information are realleged here.

7. Prime Aid Union City operated as an "S Corporation." Under the Internal Revenue Code, the profits of an S Corporation are divided among its shareholders and reported to the IRS on the Form 1120-S. All S Corporation shareholders must separately report their respective shares of corporate income on their individual income tax returns.

8. In 2012, "Tax-Preparer-1," located in Brooklyn, New York, prepared Prime Aid Union City's 2012 Form 1120-S.

9. In 2013 and 2014, "Tax Preparer-2," located in New York, New York, prepared Prime Aid Union City's Forms 1120-S (together with Tax Preparer-1, the "Tax Preparers").

10. Between in or about 2012 through in or about 2014, Prime Aid Union City deposited gross receipts into one operating bank account (the "Operating Account").

11. The Tax Preparers primarily used the deposits in the Operating Account to determine Prime Aid Union City's gross receipts and revenue, and to prepare the Forms 1120-S for Prime Aid Union City. IGOR FLEYSHMAKHER incorporated those calculations into the purported personal income that he reported on the personal tax returns Form 1040 that he filed for the following years:

| Calendar Year | Approximate Date Personal Income Tax Returns Were Filed |
|---|---|
| 2012 | October 14, 2013 |
| 2013 | September 26, 2014 |
| 2014 | January 2, 2018 |

12. Throughout that same time period, IGOR FLEYSHMAKHER diverted gross business income from Prime Aid Union City, totaling approximately $33,904,310.00, into a separate undisclosed bank account ("Account-2"), which he controlled. IGOR FLEYSHMAKHER concealed that income from the Tax Preparers and failed to report his personal share of it on his personal tax returns for 2012, 2013, and 2014.

13. Based on this unreported business income, of which IGOR FLEYSHMAKHER was entitled to a 50% share, his total approximate personal income tax due and owing for 2012 through 2014 is as follows:

| Calendar Year | Approximate Value of the Diverted Income | Approximate Tax Due and Owing |
|---|---|---|
| 2012 | $1,916,347 | $210,256.00 |
| 2013 | $1,126,967 | $242,958.00 |
| 2014 | $30,860,996 | $5,366,023.00 |
| TOTAL | $33,904,310.00 | $5,819,237.00 |

14. From in or about January 2014 to on or about January 2, 2018, in the District of New Jersey and elsewhere, defendant

**IGOR FLEYSHMAKHER**

did knowingly and willfully attempt to evade and defeat a substantial tax due and owing by him to the United States for the calendar year 2014, by preparing and causing to be prepared, signing and causing to be signed, and filing and causing to be filed with the Internal Revenue Service, false and fraudulent

federal personal income tax returns, Form 1040, for calendar year 2014 knowing them to be false and fraudulent as to material matters.

In violation of Title 26, United States Code, Section 7201.

## FORFEITURE ALLEGATION

1. Upon conviction of the Federal health care offense (as defined in 18 U.S.C. § 24) alleged in Count 1 of this Information, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the offenses (as defined in 18 U.S.C. § 24) alleged in Count 1.

## SUBSTITUTE ASSETS PROVISION

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p) (as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b)), to forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

_____
CRAIG CARPENITO
United States Attorney

CASE NUMBER: 20-193

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

IGOR FLEYSHMAKHER

**INFORMATION FOR**

18 U.S.C. § 371
26 U.S.C. § 7201

**CRAIG CARPENTIO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

*JOSHUA L. HABER*
*ASSISTANT U.S. ATTORNEY*
*(973) 645-3978*

**USA-48AD 8**
(Ed. 1/97)